FIRST NATIONAL BANK OF EL PASO ET AL. V. FITZGERALD MOOR.

Decided February 10, 1904.

**1.—Trustee's Sale—Agreement for Redemption—Inadequacy of Price.**

Evidence considered and held to sufficiently support the theories that a purchase of property by the creditor at a trustee's sale was upon agreement that the debtor might redeem it, and also, that, if there was no such agreement to hold in trust by the purchaser, the debtor had been led to permit the property to be sold at an inadequate price by representations that after the sale it would be held on such trust; for which reasons it was proper to refuse a peremptory instruction for defendant in a suit by the debtor to set aside or redeem from such sale.

**2.—Fraud on Creditors.**

Evidence held not to show such fraud on creditors in a debtor letting his property be sold under trust deed with an agreement with the purchaser that he might redeem, as to prevent his maintaining suit to set aside or redeem from such sale. See also charge on such subject held properly refused.

**3.—Same—Charge—Request—Assignment of Error.**

The court will not reverse because a charge requesting the submission of an issue was sufficient to call the attention of the court to the omission and make the same error, where the error assigned is the refusal of the charge requested, and such charge, in the form asked, was improper.

**4.—Charge on Weight of Evidence.**

Charge held properly refused because making certain facts conclusive and ignoring contrary testimony, and other theories, supported by evidence, which might render such facts inconclusive.

**5.—Trust—Mortgage—Degree of Proof.**

A conveyance absolute on its face may be established to be a mortgage by preponderance of proof; the authorities requiring clear and satisfactory evidence to engraft a trust upon a title are inapplicable to such case.

**6.—Fraud—Sale—Inadequacy of Price.**

That an agreement with a debtor to bid in his property at a sale and to hold it in trust for him might be a fraud on his creditors, was no ground for refusing to set aside such sale, independent of the existence of such agreement, and because, by fraudulent practices, he had been brought to permit the property to be sold for an inadequate price.

**7.—Charge—Statute of Frauds—Harmless Error.**

A charge giving a right to recover on a parol agreement which the statute of frauds required to be in writing, and of which the evidence did not justify a submission, is held, in view of the state of the evidence here considered, to be harmless error.

Appeal from the District Court of El Paso. Tried below before Hon. A. M. Walthall.

*Turney & Burges, Beall & Kemp,* and *Falvey & Davis,* for appellants.

*Patterson & Buckler* and *Clark, Hawkins & Franklin,* for appellee.

JAMES, CHIEF JUSTICE.—The bank held notes of appellee, secured by deeds of trust to W. H. Burges, trustee. At the time of the trustee's sale appellee also owed the bank ten or twelve thousand dollars of unsecured indebtedness.

On July 1, 1902, the trustee under one of the deeds of trust on July 1, 1902, sold the lot therein described in block 38, Mills' map of El Paso, for $13,500, and resold same lot under the other deed of trust for $250,

and another lot in same block 38 for $17,500, the bank being the purchaser of all, and on July 2d he made deeds to the bank for same.

Besides the above facts, the petition of Fitzgerald Moor, upon which the case was tried, alleged in substance that before, and at, and after the time of said sales he had an agreement with the bank that the bank should have the sale made, buy in the property, and hold the same in trust for plaintiff until he could redeem by paying the bank the secured and unsecured indebtedness of plaintiff with interest and expenses.

That the bank violated this agreement and on September 6, 1902, made a deed to defendant, Waters Davis, for said lots in block 38, reciting a consideration of $35,000 in notes, and on same day Davis executed a deed to defendants Stewart and Williams for a half interest in same for a recited consideration of $25,000, to wit, $15,000 in cash and the assumption of two of Davis' notes given in his purchase of same, and that all of said parties knew that the bank held same in trust for plaintiff as a mere mortgage to secure what plaintiff owed the bank, and that they and the bank conspired to get the title to said property for one-third its value; that said property was worth $100,000 and would readily have sold for $75,000.

In a second paragraph of his petition the plaintiff charged that if defendants should deny the agreement with him, by which he was to be allowed to redeem said property, then he charged that the defendant Stewart, who acted for said bank, so acted, talked and dealt with him in regard to the matter as to lead him to believe, and did lead him to believe, that he was to have the right to redeem said property from said sale, and that the purchase thereof by said bank was for his benefit, and that so believing he made no effort to induce other persons to attend said sale and bid on or buy said property, and that he could and would have procured others to attend said sale and bid on and buy said property for at least twice what it did bring, had he not been induced to believe that the said property was to be held in trust for him by said bank until he could redeem it.

In a third paragraph of his said petition, he alleged that it would be unjust, unfair and inequitable for defendants to hold said property from him, because it was sold at such a grossly inadequate price as to shock the conscience, which was brought about (1) by the fact that the trustee Burges was also one of the attorneys who held said notes for collection, and hence was not a suitable person to act as trustee; (2) by the fact that at the time of said sales there was pending in the District Court of said county a suit by one Lee Moor against the plaintiff and said bank and others, wherein said Lee Moor made a false and unfounded claim to an interest of one-third in and to the said property antedating said deeds of trust and which was calculated to cause said property to bring an inadequate price, and that at the time of said sales one of the attorneys for said Lee Moor appeared at the sales and publicly announced that the plaintiff in said suit owned such interest, which tended to depress the price of said property at the sale. Plaintiff offered to redeem said

property from said sales by paying all he owed the said bank, secured and unsecured.

In a fourth paragraph of his petition, plaintiff prayed judgment in the alternative against the defendant bank for the value of said property in case it should appear that he was not entitled to the other relief. He prayed that said two deeds from the trustee to the bank be canceled, and he permitted to redeem said property.

Plaintiff prayed that all the deeds be canceled and that he be allowed to redeem the property by paying the indebtedness less certain rents, and in the alternative for judgment against the bank for $75,000.

The defendants, the bank and Stewart, pleaded general demurrer, general denial, and specially denied any express or other agreement before or after the sale to hold the title for plaintiff's benefit, and that they induced him to so believe; also the statute of frauds, and specially that no written agreement was ever entered into to that effect. The defendant Waters Davis pleaded general demurrer and denial, innocent purchaser, want of notice of any such agreement or understanding as alleged. In addition Davis pleaded that such agreement, if any, was for the purpose of hindering, delaying and defrauding the creditors of Moor, and especially to prevent his son from collecting a judgment against him for $60,000. Defendant Williams adopted the allegations of the answer of Davis and of the answer of defendants Stewart and the bank.

The result of the trial was a verdict and judgment in favor of plaintiff.

We conclude that the jury from the testimony could have found that the sale was made in pursuance of an agreement between the bank and plaintiff, that the bank should have the sale take place and become the purchaser for enough property to cover the secured and the unsecured indebtedness of plaintiff to the bank, and to hold the property subject to plaintiff's right to redeem. And we conclude further that in the absence of an agreement or understanding between the parties to the above effect, there was enough in the testimony to warrant finding that the bank led plaintiff to understand and believe that he would be allowed to redeem after the sale, that plaintiff acted upon such impression, and that the property was accordingly bid in by the bank for a grossly inadequate price, and therefore in equity plaintiff should be allowed to redeem. Hence we overrule the first assignment of error, which is that the court should have given the special charge directing a verdict for defendant, for the alleged reason that evidence did not warrant any reasonable conclusion that the agreement existed, nor that the conduct of the bank was calculated to lead Moor to believe that in case the bank got the property he would be permitted to redeem. A second proposition is made in connection with the first assignment of error to the effect that if such an agreement existed, or such conduct misled plaintiff, then no other reasonable conclusion could be drawn from the evidence than that it was the fraudulent intention of Moor by such means to place his property, of value greatly in excess of his indebtedness to the bank, beyond

the reach of his creditors and especially his son Lee Moor, who was a creditor, and thus to delay, hinder and defraud his creditors and especially Lee Moor, such a transaction being against the policy of the law and void, and this being a question of law upon the facts, the court erred in not giving the peremptory instruction.

The evidence was not such as showed conclusively that the agreement, if made, was in fraud of a creditor. The testimony does not indicate any creditor, outside of those provided for in the sale, except plaintiff's son, Lee Moor. As to Lee Moor it appears that he had recovered a judgment against plaintiff in New Mexico for $60,000. This judgment was not final, having been appealed from, and was on appeal when the sale was made. Lee Moor had brought a suit in El Paso County on that judgment. The judgment was never decided on appeal, and while in this condition and after the trustee's sale, plaintiff compromised with Lee Moor for $10,000 and certain attorney's fees, the exact amount of the latter not shown. There was one piece of property in the deeds of trust which was not sold, and this the evidence in the case shows was worth $20,000. Plaintiff testified that he had other property. It appears that he had valuable property in New Mexico, and that the amount which he paid in settlement of Lee Moor's claim was derived from a sale of property there. Plaintiff testified that he owed his son nothing, but he had gotten the judgment against him.

In view of the testimony, we waive consideration of the question whether or not Lee Moor was really a creditor, and we will assume for the purpose of this appeal that he was. Still the court could not have said as a matter of law that he was a creditor for $60,000. Plaintiff in his arrangement with the bank may have had the intent to defraud his son, yet in our opinion he could insist on the performance of the bank's agreement to allow him to redeem the property, if he retained property in adequate amount to satisfy his son's claim, whatever it might be. In such event there would be no fraud in fact, nor in law. The jury, if the matter had been submitted to them, could very well have concluded that plaintiff did not owe his son $60,000. It is true his son had recovered a judgment against him for that amount, but the case being on appeal, it was not final. While in that condition, and at a time as shown by the evidence, after the son was informed that plaintiff claimed to have arranged for the right to redeem from the bank, the son accepted a sum like $10,000 in full settlement of the judgment, and at that time plaintiff had the piece of property not sold by the trustee of the value of $20,000, and other property of considerable value as above stated. The acceptance of $10,000 in settlement under these circumstances evidenced very strongly the fact that he was not really a creditor for $60,000. A jury would have been warranted in finding that he was a creditor for much less, and for such sum that would have been amply protected and covered by the property plaintiff had still undisposed of. Therefore we conclude that it would not have been in accord with the evidence for the court to assume that plaintiff was debarred from claim-

ing the benefit of the agreement to redeem, because of the son's status
as a creditor, and because his acts were in fraud of the son. The rule
is here invoked by vendees of property, who ought in equity and good
conscience to respect the agreement to redeem, and the only justification
for allowing them to invoke it is the matter of public policy involved.
It seems to us that in such a case, before the rule is enforced, the ven-
dees should be required to show that the act went so far as to amount
to a fraud. The purpose, motive or intent of plaintiff alone was not
enough. If all the property which the bank bought at the sale is laid out
of consideration, the facts and circumstances in evidence were sufficient
to have warranted a jury in finding, if the matter had been submitted to
them, that plaintiff retained property amply adequate to satisfy his
son's real demand. This disposes of the twenty-third assignment also.

The second assignment of error complains of the refusal of a charge
to the effect that if they "believed from the evidence that prior to the
sale of the property in controversy, plaintiff had an agreement or under-
standing with U. S. Stewart as the agent and representative of the de-
fendant the First National Bank of El Paso, Texas, to the effect that
the trustee, William H. Burges, should sell the property under the deeds
of trust in evidence, but that the plaintiff should have the right to
redeem the said property after said sale by payment of the debts to the
bank mentioned in said deeds of trust; and if you further believe from
the evidence that the property so described in said deeds of trust was
grossly in excess in value of the debts due the said bank, and that it was
the purpose of the said plaintiff in making said agreement to defraud
his creditors, and especially to protect said property against the judg-
ment of Lee Moor, for the sum of $60,000, or hinder or delay the said
Lee Moor in the collection of his said judgment against plaintiff, by
covering up plaintiff's said property by the agreement aforesaid, and
in that event you will find for the defendants."

For the reasons already given it would have been error to give this
charge. It assumed that Lee Moor was a creditor for the full sum of
$60,000, and, it may be said, assumed that there was evidence of the
existence of other creditors. It excluded consideration by the jury of
what they may have believed from the evidence was the extent of Lee
Moor's claim, if anything, and excluded consideration of whether or not
plaintiff retained property sufficient to satisfy such claim.

It may be well to state at this place that the court did not submit the
case upon any issue concerning the sale and the agreement to redeem
being fraudulent as to creditors, and the only charge requested on that
issue was the one above copied, and which we think the court was cor-
rect in refusing. Nor is there any assignment of error which claims that
although the above charge may have been erroneous, it was sufficient
as a request for the court to give a correct charge submitting that issue,
hence we have no right to reverse the judgment because the court failed
to submit the issue. Appellant's position here is that of insisting that
the issue should have been submitted as asked.

Having reached the conclusion that the evidence was such as to justify an adverse finding on the issue of fraud against creditors in the arrangement for the sale and the privilege of redeeming, and that therefore the court properly refused to peremptorily instruct a verdict for defendants, and such issue not having been submitted to the jury, which was merely an error of omission, and defendants' request for submission of the issue having been properly refused, we conclude that such matter is not any longer in the case.

The third assignment is overruled. The requested charge was erroneous and properly refused because it would have made certain testimony conclusive concerning the existence of the agreement for plaintiff to redeem after the sale which was not conclusive of that fact. Such facts may have existed, and still it may have been understood between plaintiff and the bank that he could redeem. The charge ignored testimony tending to establish plaintiff's contention that the understanding existed, notwithstanding the expressions made use of. Besides it ignored one theory which was averred by plaintiff and submitted by the court, that under certain circumstances plaintiff would have the right to redeem without any agreement.

What has been said is sufficient to dispose of the assignments from number 5 to 12 inclusive, also the twentieth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth.

All those assignments and propositions by which appellants liken this case to those in which a trust is sought to be engrafted upon a title, or which require the fact to be established by clear and satisfactory evidence, are overruled. The effort in this case is to establish that a conveyance absolute on its face is in fact a mortgage, and subject to the grantor's right to redeem, and this may be done as in ordinary cases by the preponderance of the evidence, and frequently this is done by circumstances. This embraces the thirteenth, eighteenth and nineteenth assignments.

The fourteenth assignment questions that portion of the charge which submitted the case on the theory of the officers of the bank having led plaintiff to believe and rely on his being permitted to redeem. It is insisted that this was on the weight of the evidence because it in effect informed the jury that although they believed the agreement could not have been lawfully made on account of its effect tending to defraud creditors, they could still upon this theory find for plaintiff.

Inasmuch as the charges nowhere submitted the question of the agreement or arrangement being fraudulent as to creditors, and did not refer to the subject, and defendants have not placed themselves in position to complain of such omission, this assignment can not avail them. Besides if there had been no agreement, or understanding amounting to an agreement, between the parties, to hide plaintiff's property from a creditor, and the fact is that his right to redeem arose simply from acts and conversations on the part of the bank's officers leading plaintiff to rely thereon to his injury without any agreement, we utterly fail to see

how plaintiff was therein guilty of any act or agreement in fraud of creditors.

The twenty-first and twenty-second assignments are overruled. There was sufficient evidence by circumstances to warrant the jury in finding that the defendants, Williams and Davis, were charged with knowledge of plaintiff's right to redeem, when they respectively acquired their interests.

The twenty-fourth assignment is overruled. We can not see the relevancy in this proceeding of what took place between Moor and his son anterior to the New Mexico judgment.

The fifteenth and seventeenth assignments complain of clauses 3 and 6 of the charge, which reads as follows:

"Third. Should you find from the evidence that there was no understanding or agreement, either before or after the said trustee's sales, between the plaintiff and the said Stewart that the plaintiff should have the right to redeem said property from said sales and that the said Stewart, by his conduct, conversation, acts and representations, did not cause plaintiff to believe that he could redeem said property from said sales by the payment of his debts to defendant bank, and if you believe that the conduct, representations or acts of the said Stewart did not cause the said property to sell for a grossly inadequate price, if it did so sell, then the plaintiff would not be entitled to recover as against either of the defendants."

"Sixth. If you believe from the evidence that, after the trustee's sales and about the time his deeds were delivered to the bank, there was an agreement or understanding between the plaintiff and U. S. Stewart to the effect that the bank should hold the title conveyed by the trustee's deeds and the indebtedness previously existing upon the part of the plaintiff Moor to the bank should continue in existence and that all matters connected with the indebtedness should remain as they were before the sale, then you will find against the defendants the First National Bank, U. S. Stewart and Joseph F. Williams, and also against the defendant Davis if you believe that he had notice of such arrangement, or believe that he knew such facts as would have put a reasonably prudent man upon inquiry, and such inquiry, if followed up, would have led to the discovery of such arrangement or understanding."

We are inclined to agree with appellants that it was error to submit an issue concerning an agreement for redemption occurring after the sale and before the execution of the deed by the trustee. We think that the right of redemption was cut off by the sale, and a subsequent agreement for that right would have had to be in writing by reason of the statute of frauds.

The testimony relative to an agreement or understanding after the sale and before the trustee executed deeds was that of plaintiff, and consisted of a conversation with the representative of the bank. As to this he testified:

"A. Yes sir, after the sale, either that evening or the next morning, as I stated, I saw Mr. Stewart. I went into the bank to see something about how he was satisfied with the sale and we proceeded with our business. He said in consequence of Mr. Franklin giving that notice he would not do anything then—the bank could not. We would have to leave everything just as it was. He said we can not do anything at all, but if Franklin had not given that notice that we could have gone ahead but now we have a big law suit on hand—don't know how much it will cost—and we have to wait until that is settled up before we can do anything at all. The bank will not do anything; leave it as it is. I replied, 'Mr. Stewart, I expected to get money enough out of this property to be able to bid on the New Mexico sale.' He answered: 'Yes, but you see how it is. Mr. Franklin giving that notice we can not afford to do it now.' He said to me, 'It looks like you would be able to get that much money out of the ninety feet left.' That is all I remember occurring between Mr. Stewart and myself that morning. I told him I was disappointed in not getting money to take care of myself in the New Mexico sale. My recollection is that was the afternoon of the sale or the next morning." Stewart, the representative of the bank, denied such conversation.

We observe that the question of the existence of an agreement prior to the sale depended also on conversations which plaintiff testified he had with Stewart. The statements he attributed to Stewart in the conversation prior to the sale tending to show an understanding in favor of the right to redeem, were likewise denied in toto by Stewart, the difference being that as to the agreement prior to the sale plaintiff was corroborated by certain testimony of his attorney, Millard Patterson. As plaintiff detailed the interview with Stewart after the sale, the latter refused to let him have more money, for a certain reason, but in effect recognized that an understanding of that nature had existed before the sale, and indicated a willingness to carry out such an understanding later on in a certain event. The testimony of plaintiff concerning the subsequent interview, if believed by the jury, can hardly of itself be considered an independent agreement permitting a redemption. And it was doubtless in view of this testimony that the court submitted the issue of a subsequent agreement. We shall therefore assume that such issue should not have been submitted, because of the lack of evidence to support the issue, and because of the statute of frauds. Nevertheless we think the error ought not to cause a reversal of the judgment under the circumstances. If the jury found against plaintiff on that particular issue, defendant was not injured by the erroneous submission of it. If on the other hand they found for plaintiff on that issue, then it is wholly improbable and inconceivable that they did not find for him on the issue of an agreement preceding the sale. If the jury considered the evidence relative to the subsequent agreement and found for plaintiff on that issue they must of necessity have believed plaintiff and discredited Stewart.

If they did this they must also have believed him and discredited Stewart in respect to the conversations that preceded the sale. It would be unreasonable to view the matter otherwise, even if the issue as to the prior conversations rested solely on the question of veracity of Stewart and Moor. But as to the previous agreement Moor was corroborated by Mr. Patterson, who testified that he also had a conversation with Stewart prior to the sale and to the same effect. If plaintiff's account of the subsequent conversation with Stewart was found to be true, it involved the finding in favor of a preceding agreement or understanding, for the statements of Stewart in the subsequent interview, as stated by Moor, clearly implied the existence of a previous agreement between them. Under these circumstances, apparent of record, the submission of the issue of an agreement to redeem entered into after the sale, although error, should not have the effect of disturbing the judgment, because injury to defendant could only have accrued if the jury found in favor of a subsequent agreement, and if they did this they must necessarily have found in favor of plaintiff as to an antecedent agreement which entitled him to redeem. For these reasons the assignments will be overruled.

*Affirmed.*